**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Tawanda Allen, Appellant.

Appellate Case No. 2010-172506

Appeal From Williamsburg County
Clifton Newman, Circuit Court Judge

Unpublished Opinion No. 2014-UP-304
Heard April 10, 2014 – Filed July 30, 2014

**AFFIRMED**

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Alphonso Simon, Jr., all of Columbia; and Solicitor Ernest Adolphus Finney, III, of Sumter, for Respondent.

**THOMAS, J.:**  Tawanda Allen appeals her convictions for murder, first-degree burglary, and criminal conspiracy, arguing the circuit court erred in admitting her confession into evidence.  Allen contends her confession was inadmissible because it was procured as a result of a police officer's threat to charge her with murder if she did not "come straight."  We affirm.

"Our role when reviewing a trial court's ruling concerning the admissibility of a statement upon proof of its voluntariness is not to reevaluate the facts based on our view of the preponderance of the evidence." *State v. Breeze*, 379 S.C. 538, 543, 665 S.E.2d 247, 250 (Ct. App. 2008).  "Rather, our standard of review is limited to determining whether the trial court's ruling is supported by any evidence." *Id.* "Thus, on appeal the trial court's findings as to the voluntariness of a statement will not be reversed unless they are so erroneous as to show an abuse of discretion." *Id.* "The test of voluntariness is whether a suspect's will was overborne by the circumstances surrounding the given statement." *Id.* at 544, 665 S.E.2d at 250.  "In making this determination, the trial court must examine the totality of the circumstances surrounding the statement." *Id.*  In looking to the totality of the circumstances to determine the voluntariness of a statement, the circuit court should consider factors such as "the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health." *State v. Miller*, 375 S.C. 370, 385, 652 S.E.2d 444, 452 (Ct. App. 2007) (internal citations omitted) (quoting *Withrow v. Williams*, 507 U.S. 680, 693 (1993)).  "Appellate entities in South Carolina have recognized that appropriate factors to consider in the totality-of-circumstances analysis include: background, experience, and conduct of the accused; age; length of custody; police misrepresentations; isolation of a minor from his or her parent; threats of violence; and promises of leniency." *Id.* at 386, 652 S.E.2d at 452. "Coercive police activity is a necessary predicate to finding a statement is not voluntary." *Id.*  "A statement may not be 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] obtained by the exertion of improper influence.'" *Id.* (alterations in original) (quoting *State v. Rochester*, 301 S.C. 196, 200, 391 S.E.2d 244, 246 (1990)).

Prior to trial, the circuit court conducted a hearing pursuant to *Jackson v. Denno*[1] to determine the voluntariness and admissibility of Allen's confession.  Officer Pamela Jean Lail testified at the hearing that she, along with Investigator Whack

---

[1] 378 U.S. 368 (1964).

and Lieutenant Collins, interviewed Allen for one hour.[2]  Lail maintained that Allen did not appear to be under the influence of alcohol or drugs during the interview, nor did Allen appear to be suffering from any mental or physical ailments.  Additionally, Lail stated Allen could read and write, seemed to understand what the officers were saying, acknowledged that she understood her rights, and never requested to stop the interview for any reason.  According to Lail, the police did not promise Allen anything in exchange for her confession, nor did they threaten or mistreat her in any way, such as denying her food or bathroom breaks.  Lail further claimed that when Collins told Allen halfway through the interview that she could be charged with murder and urged her to "come straight," Collins's remarks were not delivered in a threatening manner.  Lail also testified Allen's confession was brought about after "she knew [the police] had witnesses" disproving her story and connecting her to the crimes.  In listening to the audio recording of the interview, we note a lack of discernable change in Allen's speech before and after Collins's statement.  We hold the above-listed facts are evidence that Allen's will was not overborne by the circumstances surrounding the given confession.  *See Breeze*, 379 S.C. at 545, 665 S.E.2d at 251 (finding that, based upon an officer's testimony regarding the circumstances of the defendant's statement, it could not conclude the circuit court's ruling that the defendant's statement was voluntary was unsupported by any evidence); *Miller*, 375 S.C. at 387-88, 652 S.E.2d at 453 (upholding the circuit court's determination of voluntariness because the circuit court had the opportunity to listen to the testimony, assess the demeanor and credibility of witnesses, and weigh evidence accordingly when defendant's attorney testified defendant was coerced into making a statement by a promise of a lenient sentence but four witnesses for the State denied any promise of leniency).

**AFFIRMED.**

**CURETON, A.J., concurs in result only.**

**HUFF, J.:**  I concur in result.  I write separately, because I believe the trial court misapplied the law in deciding Allen's statement was voluntary.  However, because appellate counsel does not argue error in this respect, the standard of review requires this matter be affirmed.

---

[2] Investigator Whack's and Lieutenant Collins's first names do not appear in the record.

In Allen's statement to police, she initially denied being in South Carolina the weekend the victim was shot. However, the officers subsequently confronted her with evidence from witnesses placing her in the area. It is at this point they also brought up that she was not currently charged with murder, but could be charged with murder, and implied they would have to charge her with murder if she was not forthcoming. Allen thereafter admitted to driving to South Carolina with her boyfriend, picking up her son and one of his friends, driving the three to victim's house, hearing gunshots after the three went to victim's house, and driving the three away. Allen also admitted she believed they were going to kill the victim when they got out of the car, and her boyfriend had told her before they arrived at the victim's home that Allen's son needed to "do" the victim before the victim had someone "do" him.

Defense counsel argued Allen's statement should be suppressed because she was threatened at least twice in the taking of this statement, being told she would be placed in greater jeopardy if she was not straight with the investigators, and it was at this point that the statement took a different turn with Allen then incriminating herself. The State argued that the court was to look to see if Allen properly waived her *Miranda*[3] rights at the start of her statement and "if the Court is satisfied she understood what she was doing and she gave a knowing and voluntary voluntarily (sic) statement that we would submit that anything that is made after she was properly advised of her rights and she waived them is admissible." Defense counsel countered one cannot be bound by a waiver given at the beginning of a statement when there is a "180-degree change" during the giving of the statement, because to do so would allow the State to take whatever action it wanted as long as it secured the initial waiver.

The trial court apparently agreed with the State's argument, ruling as follows:

> [W]hen a Court looks to whether or not a statement is freely
> and voluntarily given the Court is not interested in the contents
> of the statement. The Court is interested in whether or not a
> statement was made and whether or not the statement was itself
> was (sic) freely and voluntarily [given] and without hearing
> whatever was said was part of the statement. Because once a
> statement is freely and voluntarily given, what is said is beyond

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

know the scope of the inquiry as to whether the statement is free and voluntarily (sic). So the Court doesn't then go on and examine the statement itself to test whether each response was free and voluntary and making an assessment that at some point in time it no longer became free and voluntary, but generally just whether the statement itself after being properly advised whether the rights were waived and the statement freely and voluntarily given. I find that the State has established by a preponderance of the evidence that the statements made by the defendant in this case were free and voluntary statements after the constitutional rights as outlined in [*Miranda v. Arizona*] and all other subsequent cases were given.

The trial court did not rule on whether the officers' reference to bringing a murder charge against her qualified as a threat, and if it did qualify as a threat, whether it induced Allen to then make the admissions incriminating herself. Rather, the trial court refused to consider what occurred during the statement, looking only at the fact that Allen voluntarily waived her *Miranda* rights at the start of her statement. Our law, however, provides that a voluntary waiver of *Miranda* rights only continues until one revokes the waiver or "circumstances exist which establish that his 'will has been overborne and his capacity for self-determination critically impaired.'" *State v. Rochester*, 301 S.C. 196, 200, 391 S.E.2d 244, 246 (1990). Therefore, if the circumstances showed Allen's will was overborne during the giving of the statement, her voluntary waiver would have ended at that point. Accordingly, the trial court misapplied the law in ruling Allen's statement was admissible based simply on her initial waiver, and its ruling was based on an error of law. Though there may have been some evidence to support a ruling that Allen's sudden confession was spurred by the officers confronting her with evidence she was in fact involved in the matter rather than a threat to upgrade her charge to murder, the trial court did not base its ruling on this. Instead, the trial court specifically declined to consider what occurred during the giving of the statement.

Unfortunately, Allen does not argue on appeal that the trial court committed an error of law in ruling on this basis,[4] but only that her confession was inadmissible

---

[4] At oral argument, appellate counsel indicated that he was only ultimately arguing against the court's determination that the references to changing Allen's charge to murder did not make the statement involuntary, and he conceded he did not have any argument about the basis of the trial court's ruling.

because it was procured as a result of a police officer's threat to charge her with murder if she did not "come straight." As noted by Judge Thomas, in reviewing a trial court's ruling concerning voluntariness of a statement, this court does not re-evaluate the facts based on its own view of the preponderance of the evidence, but simply determines whether the trial court's ruling is supported by any evidence. Because there is evidence, Allen's decision to change her statement to incriminate herself was attributable to the officers confronting her with evidence from witnesses placing her in the area rather than any perceived threats from the officers, our standard of review requires affirmance on this argument.